**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **JAMES H. HIGGASON, JR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | No. 3:08 CV 180 |
| | ) | |
| **SUPERINTENDENT, INDIANA** | ) | |
| **STATE PRISON,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

James Higgason submitted a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 asserting denial of due process in three related prison disciplinary hearings. On February 5, 2007, correctional officers wrote three conduct reports against Higgason, charging him with battery on another person without a weapon, intimidation or threatening, and disorderly conduct. The incidents that resulted in these conduct reports occurred the same day and location within the prison, and chronicled a series of separate but related incidents involving Higgason. The disciplinary hearing board ("DHB") tried the three charges in successive hearings on the same day.

The DHB found Higgason guilty of all three charges, took ninety days of recreation privileges, sentenced him to disciplinary segregation for six months, deprived him of 180 days of earned credit time, and demoted him from Credit Class II to Credit Class III. Higgason appealed unsuccessfully to the Westville Correctional Facility Superintendent and to the Indiana Department of Correction's final reviewing authority.

In case WCU 07-02-100, which dealt with the initial incident, Correctional Officer B. Agee accused Higgason of committing battery on him without a weapon by hitting him with a tray, grabbing him by his duty belt, and throwing food and other trash on him. (DE 15-2, Ex. A-3.) Sergeant M. Barry wrote a witness statement confirming Officer Agee's accusations. (DE 15-10, Ex. H-16.) Higgason states that he had prepared a nine page written statement that he wanted to read to the board at the hearing. (Petition at 5 & Exs. F 1-2 & G 1-9.) According to the petition, "Lt. Kimmel allowed Higgason to read aloud the first paragraph" but would not permit him to make the point that Officer Agee's allegation that Higgason had thrown "food" on the range was an obvious lie because he always eats everything on his food trays and would never waste any food in the manner delineated in this "false" report of conduct.[1]  (Petition at 5-7.) However, Higgason concedes in his petition that Lieutenant Kimmel admitted the entire nine page written statement into evidence at the hearing. The statement itself is part of the record labeled Exhibit G. According to the Report of Disciplinary Hearing for WCU 07-02-100, the DHB "reviewed the reports and statement from J3 Higgason." (DE 15-7, Ex. F.)

In case WCU 07-02-0099, Officer Agee charged Higgason with intimidation or threatening based on statements Higgason made to him while he was photographing the trash on the floor in front of Higgason's cell after the incident described above. According to the conduct report, Higgason threatened to kill Officer Agee and others. (DE 13, Ex. K-1.)

---

[1] The conduct report charged Higgason with throwing "trash" which included but was not limited to food. Higgason does not deny throwing non edible trash at Officer Agee.

Higgason also prepared a written statement for this hearing, and asserts in his petition that "Lt. Kimmel was extremely selective about what he would permit Higgason to read aloud" at the hearing. (Petition at 9.) According to the Report of Disciplinary Hearing prepared by Lt. Kimmel, "J3 Higgason read a prepared statement to the DHB" and the Report of Disciplinary Hearing summarized Higgason's main points. (DE 15-17, Ex. O.) Also, according to the report, when the board asked Higgason "if he (Higgason) made any statement to ofc. Agee while Agee was outside the cell, Higgason responded by saying 'I pled the Fifth'" Amendment. (DE 15-17, Ex. O.)

The statement Higgason prepared for this hearing is not lengthy; it consists of two handwritten pages. (DE 1-3 at 1-2.) In this statement, Higgason essentially admits that he threatened Officer Agee but asserts, "however, there are some mitigating circumstances which I feel deserve your consideration." (*Id.* at 1.) Higgason states in his petition that the DHB chairman allowed Higgason to read his statement but "he kept interrupting Higgason's recital. For example: Lt. Kimmel refused to permit Higgason to discuss any mitigating circumstances which would have justified an aggressive exchange of words." (DE 1-1 at 9.) After enumerating his mitigating circumstances, Higgason concludes his written statement by saying that he threatened Officer Agee "in the heat of anger — I should not be held responsible for anything that I may have said to Ofc. Agee." (*Id.* at 2.)

In case WCU 07-02-0101, Sgt. Barry wrote a conduct report charging Higgason with disorderly conduct. According to the conduct report, while Higgason was at recreation later in the day, Sgt. Barry came to his cell to remove his property from his cell as a result

of the incidents described above. According to the conduct report, Higgason began to pound the recreation area door with his fists and kick it with his feet. (DE 15-19, Exs. Q & R.) Higgason prepared a four page written statement. (DE 1-3 at 3-7.) He states in his petition that Lt. Kimmel "ordered him to summarize the content of [the statement]," (DE 1-1 at 10), which, according to the Report of Discipliary Hearing, Higgason did. The DHB chairman wrote on the hearing report that "Higgason presented a written statement. They are accusing me of saying my wrist was broken as a result of me punching the door when it really happened when Agee hit me with the food tray – all 4 staff are lying about me punching the door" (DE 15-26, Ex. X.) Although Higgason denies "punching" the door with his fist, he admits in his written statement that he yelled and "kicked on the recreation door four times." (DE 1-3 at 4.) The board found Higgason guilty, stating "J3 Higgason did in fact admit that he was kicking the recreation door, claiming a medical emergency. Conduct report and admission of Higgason supports J3 was kicking the door thus being disorderly."[2] *(Id.)*

---

[2] Higgason characterized this as a medical emergency in his statement because his wrist hurt, but he did not treat his problem with his wrist as an emergency earlier in the day. Higgason says in his written statement that Officer Agee injured his right wrist during the scuffle that resulted in the first conduct report. (DE 15-3 at 3.) He concedes that right after the incident Lt. Burkett "inquired as to whether or not I needed any medical attention . . . [but] . . . I told Lt. Burkett that I did not need any medical attention because I did not want them to make an incident report or a medical report." *Id.* Higgason states that he began kicking the door to demand medical attention only after he saw that Sgt. Barry was going to put him on strip cell status and "Sgt. Barry then assured me that he would contact medical." (DE 15-3 at 4.)

Where prisoners lose good time credits at prison disciplinary hearings, the Fourteenth Amendment's Due Process Clause guarantees them certain procedural protections, including: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) an opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact finder of evidence relied on and the reasons for the disciplinary action, *Wolff v. McDonnell*, 418 U.S. 539 (1974), and "some evidence" to support the decision of the prison disciplinary board." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Higgason asserts that the DHB denied him due process when it "chose to adjudicate all three (3) cases on 2/16/2007 at the same conduct adjustment board hearing." (Petition at p. 5.) But the due process clause does not prohibit prison disciplinary hearing boards from conducting hearings on related charges at the same time any more than it prohibits courts from trying related criminal charges at the same time. The incidents that resulted in these conduct reports occurred the same day and location within the prison, and appear to be part of a continuing pattern of misconduct by Higgason. The DHB did not deprive Higgason of due process when it heard the three charges in successive hearings on the same day. The DHB prepared separate disciplinary hearing reports for each charge and each hearing report complied with the requirements of *Wolff v. McDonnell* by stating the evidence considered by the board in each case and the facts relied on by the DHB to find Higgason guilty of each charge.

Higgason states in his petition as his sole ground that:

> [T]he Disciplinary Hearing Body (DHB) had already predetermined Higgason's guilt to those charged allegations. Furthermore, the DHB Chairman, Lt. J. Kimmel, would not permit Higgason to present the most effective defense that was available to him concerning those charged allegations, which invokes the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

(Petition at 4.)

Higgason argues that the DHB violated his right to present a defense to the charges against him because it did not allow him to read prepared statements at the hearings. The Respondent argues that the DHB allowed him to read all of the statements at the hearings, but Higgason states that they did not. For the purposes of this memorandum, the court will assume that Higgason was not allowed to read all three statements aloud in their entireties.

The parties' submissions establish that the board allowed Higgason to read at least portions of each statement and to summarize the portions of the statements he did not actually read completely aloud. The statement in WCU 07-02-100 was made part of the administrative record, and all of the written statements have been submitted to and reviewed by this court.

Higgason admits that he was allowed to read portions of his lengthy written statement in WCU 07-02-100, and the entire statement was received by the DHB and became part of the record. The DHB also allowed Higgason to read portions of his prepared statements in WCU 07-02-0099 and WCU 07-02-0101 aloud, and allowed him to summarize the portions not read aloud. It should be noted that the written statements in

WCU 07-02-0099 and WCU 07-02-0101 are not exculpatory because Higgason admits facts in each of them that support a finding of guilt. In WCU 07-02-0099, Higgason essentially admitted that he threatened Officer Agee, and he invoked the Fifth Amendment at the hearing when asked if he had threatened the officer.[3] All Higgason asked of the DHB was to take into account mitigating circumstances, particularly that he spoke in the heat of anger and therefore should not be held responsible for the things he said. Higgason's statement, by itself, provides "some evidence" of guilt within the meaning of *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. at 455. In WCU 07-02-0099 Higgason denied punching the door, but admits yelling and kicking the door which comport with the conduct report and support a finding of guilt of disorderly conduct under *Superintendent*. Even in WCU 07-02-100, Higgason focuses on a denial that he threw food at Officer Agee and does not address the allegation that he threw nonedible trash at the officer. Even if Higgason is correct in his statement that the conduct report was false to the extent that it stated that he threw food when he did not, that is not a defense to the charge of throwing other trash at Officer Agee.

---

[3] The Fifth Amendment has no application to prison discplinary hearings, and a DHB may take a prisoner's silence as an admission of guilt. *Baxter v. Palmigiano*, 425 U.S. 308 (1976). In *Baxter* the Supreme Court refused to extend the rule in *Griffin v. California*, 380 U.S. 609 (1965), holding that the Fifth Amendment prohibits courts from instructing a criminal jury that it may draw an inference of guilt from a defendant's failure to testify, to prison disciplinary hearings because these proceedings "involve the correctional process and important state interests other than conviction for crime." *Baxter*, 425 U.S. at 319.

Higgason correctly notes that *Wolff v. McDonnell* provides that prisoners must have the opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals. The written statements Higgason prepared are not documentary evidence in the normal sense of the term — rather they are the arguments Higgason wished to present at the hearings. In the circumstances of these three conduct reports against Higgason, that the DHB required him to summarize these statements did not deprive him of a fair hearing or suggest that the DHB members were not impartial decision makers, and did not violate the Fourteenth Amendment's due process clause. By allowing Higgason to submit his arguments in writing in one case, and allowing him to summarize his statements in the others, the DHB met the requirements of *Wolff v. McDonnell*.

For the foregoing reasons, the court **DENIES** this petition (docket # 1).

**SO ORDERED.**

**DATED**: July 16, 2009

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT